UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| DINAH NISSEN, <br>                           Plaintiff, <br> vs. <br><br> CIGNA HEALTH AND LIFE INSURANCE COMPANY, <br><br>                           Defendant. | **COMPLAINT** <br><br> JANUARY 19, 2021 |

Plaintiff, Dinah Nissen, by her undersigned attorneys, alleges the following based upon her knowledge as set forth herein and upon information and belief. Further additional evidence supporting the claims set forth herein can be obtained after a reasonable opportunity for discovery.

## INTRODUCTION

1.     Plaintiff, who received health benefits through a group health plan issued and administered by Cigna Health and Life Insurance Company ("Cigna") (the "Plan"), alleges violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*.

## JURISDICTION

2.     This court has subject matter jurisdiction over this action pursuant to (a) 28 U.S.C. § 1331, which provides for federal jurisdiction over civil actions arising under the laws of the United States, including ERISA; and (b) 29 U.S.C. § 1132(e)(1) providing for federal jurisdiction of actions brought under Title I of ERISA. Further, declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202 and Rules 58 and 65 of the Federal Rules of Civil Procedure.

3.     ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2) provides for nationwide service of process. Upon information and belief, Defendant is a resident of the United States and subject to

service in the United States, and this Court therefore has personal jurisdiction over it. This Court also has personal jurisdiction over Defendant pursuant to Fed. R. Civ. P. 4(k)(1)(A) because it would be subject to the jurisdiction of a court of general jurisdiction in Connecticut. Defendant also resides or may be found in this District or has consented to jurisdiction in this District. In any event, this Court has personal jurisdiction over Defendant because a substantial portion of the wrongdoing alleged in this Complaint took place in the State of Connecticut; Defendant is authorized to do business in the State of Connecticut; Defendant conducts business in the State of Connecticut and this District; Defendant has principal executive offices in the State of Connecticut and this District; Defendant advertises and promotes its services in the State of Connecticut and this District; Defendant has sufficient minimum contacts with the State of Connecticut; Defendant administers health plans from the State of Connecticut; and/or Defendant otherwise intentionally avails itself of the markets in the State of Connecticut through the marketing and sale of insurance and related products and services in this State so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to the claims herein occurred within this District and/or Defendant resides in this district. Venue is also proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Defendant resides or may be found in this District and some or all of the fiduciary breaches or other violations for which relief is sought occurred in or originated in this District. Venue is also proper in this District pursuant to 18 U.S.C. § 1965, because Defendant resides, is found, has an agent, or transacts its affairs in this District.

## PARTIES

5.      Plaintiff Nissen is a citizen and resident of New York who received coverage under a group health plan sponsored by Greater Than One, Inc. using a governing form plan document

provided by Cigna (the "Plan"). This Plan is a welfare benefit plan, as that term is defined in 29 U.S.C. § 1002(1)(A), subject to ERISA.  This Plan at all relevant times has been administered by Cigna.

6.     Defendant Cigna, incorporated in Connecticut, is a wholly-owned subsidiary of Cigna Corporation with its principal place of business in Bloomfield, Connecticut.[1] Cigna health insurance policies. Cigna also administers health benefits for health insurance policies it sells and health plans it administers.

## SUBSTANTIVE ALLEGATIONS

7.     Health plans are paid for by a premium for a defined period or through employer plans that either provide benefits by purchasing group insurance policies or are self-funded but administered by health insurance companies and their affiliates.[2] Premiums and contributions to coverage in all types of plans can be paid by individual plan participants or beneficiaries, employees, unions, employers or other institutions.

---

[1] Cigna Corporation is a global health services organization. In 2015, it reported revenue in excess of $37.9 billion, and the company is currently ranked 79th on the Fortune 500. Cigna operates through three segments: (1) Global Health Care, which is comprised of the Commercial operating segment, which encompasses both the U.S. commercial and certain international health care businesses serving employers and her employees, and other groups, and the Individuals and Government operating segment, which offers Medicare Advantage and Medicare Part D plans to seniors and Medicaid plans; (2) Global Supplemental Benefits, which offers supplemental health, life and accident insurance products in selected international markets and in the U.S.; and (3) Group Disability and Life, which provides group long-term and short-term disability, group life, accident and specialty insurance products and related services.

[2] According to Cigna, over 85% of its market is in ERISA-covered health plans, while 5% is in the individual market and government-related plans like Medicare. Approximately 83% of Cigna's customers are in "administrative services only" arrangements where Cigna and its affiliates manage and administer self-funded plans, while approximately 17% of plans are insured through Cigna policies. Whatever the plan structure, Cigna and its affiliates contract with managers to access her networks of providers/vendors.

8.     Consumers purchase health insurance and enroll in employer-sponsored health plans to protect them from unexpected high medical costs.

9.     Plaintiff's Plan provided for **"Emergency and Urgent Care Services*EHB"** (emphasis in the original). These services included "Outpatient Professional Services" at an "Outpatient Facility."

10.     According to the Plan, "Emergency Services" means services "with respect to an emergency medical condition."

11.     According to the Plan, an "Emergency Medical Condition" includes "serious disfigurement."

12.     On or about Sunday May 17, 2020 at 1:30pm, Plaintiff was badly bitten on her right cheek in Sagaponack, New York by a rescue dog that had been picked up from an animal shelter that day.

13.     Following the bite, Plaintiff went straight to the closest urgent care location at Northwell Urgent Care in Bridgehampton, New York. The Northwell doctor who examined the wound told Plaintiff that she would need to have the wound stitched up by a plastic surgeon as a matter of urgency.

14.     The Northwell doctor told Plaintiff that there were two plastic surgeons in the area and that he would check to see which one was on call in the emergency room at the closest hospital, Stony Brook Southampton Hospital in Southampton, New York. Plaintiff was put in touch with Dr. John Anton and told that he was on call at Stony Brook Southampton Hospital that afternoon.

15.     Dr. Anton contacted Plaintiff and told her that she should come to his office, rather than the hospital, given the number of COVID patients at the hospital.  Plaintiff went from

Northwell Urgent Care in Bridgehampton straight to Dr. Anton's office, which is located within a quarter mile of the Stony Brook Southampton Hospital.

16.     After filling out a number of forms, including credit card details, Plaintiff spent two hours at Dr. Anton's office on Sunday May 17, 2020 and received four layers of stitches to deal with the wounds caused by the dog bite.

17.     As Plaintiff left Dr. Anton's office, she received a text that her credit card had been charged $9,200.

18.     On June 16, 2020 Plaintiff received an invoice from Dr. Anton's billing provider, Ms. Annette Charnow, for $10,300 (showing $9,200 paid).  The invoice indicated that the procedure conducted on May 17, 2020 had been an emergency procedure.

19.     On June 26, 2020 Plaintiff called Cigna and was told by the Cigna representative that she spoke to that Cigna would cover the costs of an emergency procedure (subject to any applicable deductions/co-insurance etc.)

20.     On June 28, 2020 Plaintiff submitted a claim to Cigna for the May 17, 2020 emergency procedure, providing background information and making it clear that the treatment she had received had been provided on an emergency basis.

21.     On July 13, 2020 Cigna rejected Plaintiff's claim on grounds that Dr. Anton was a non-network provider and the codes on his invoice did not indicate an emergency.

22.     On July 20, 2020 Plaintiff emailed Dr. Anton's billing provider, Ms. Chernow, to explain that Cigna had rejected her claim due to the absence of emergency codes on the letter.  Ms. Chernow responded by email that same day (elipses do not indicate missing text):

    "There is not a code for emergency… place of service code 23 states you were seen in an emergency room. We cannot [bill] that place of service code because you were seen in the office. Place of service code 11. You must appeal and state that you had no choice but to go to a local plastic surgeon instead of the ER due to Covid 19…"

23.     On July 20, 2020 Ms. Chernow emailed Plaintiff a letter addressed "To Whom It May Concern", confirming that Dr. Anton had been the doctor on call at the hospital on May 17 and explaining the background to his seeing Plaintiff at his office rather than the hospital due to COVID cases at the hospital. The letter stated:

> To Whom It May Concern:
>
> Patient Dinah Nissen DOB 3-23-1959 was bitten by a dog on her face on 5-17-2020.
>
> Ms. Nissen [was] told by the local Urgent care to call the local emergency room at Southampton Hospital. The Emergency room directed her to the on-call Plastic Surgeon Dr John Anton.  Dr Anton told Ms. Nissen that due the emergency room still treating Covid19 patients, that he would see and treat her in his private office.
>
> Please be aware, that the Southampton area of Eastern Long Island does not have many plastic surgeons and the only hospital in town, Southampton Hospital. The Emergency room has been inundated with Covid-19 patients since March.
>
> Please review and reconsider your member claim for reimbursement. Your member needed immediate care at the time of her injury. There was no other Plastic Surgeon available at the time to see her. Please make an exception, due to the Pandemic in New York.
>
> Dr. John Anton does not participate with any insurance plans.  Payment for his services were due at the time of service.  This is our standard billing practice.

24.     On August 1, 2020 Plaintiff appealed Cigna's decision to deny coverage, again clearly explaining that the treatment had been provided on an emergency basis and including a copy of the letter dated July 20, 2020 from Ms Chernow.

25.     On August 24, 2020 Cigna rejected Plaintiff's appeal on grounds that Dr. Anton was out of network.  The decision made no mention of Plaintiff's claim that the treatment had been provided on an emergency basis.

26.     On October 8, 2020 Plaintiff submitted a second appeal restressing that this was a claim for emergency services and pointing out that the first appeal decision had completely ignored that issue.

27.     On October 22, 2020 Cigna denied the second appeal, again ignoring the issue about emergency service:

"We have denied your claim because you did not receive services from a participating provider in your network and you do not have Out-of-Network benefits."

28.     Under the Plan, Defendant had a fiduciary duty to apply the Plan terms set forth above in administering Plaintiff's benefits. Cigna's form Plans provide:

**Discretionary Authority**

The Plan Administrator delegates to Cigna the discretionary authority to interpret and apply plan terms and to make factual determinations in connection with its review of claims under the plan. Such discretionary authority is intended to include, but not limited to, the determination of the eligibility of persons desiring to enroll in or claim benefits under the plan, the determination of whether a person is entitled to benefits under the plan, and the computation of any and all benefit payments. The Plan Administrator also delegates to Cigna the discretionary authority to perform a full and fair review, as required by ERISA, of each claim denial which has been appealed by the claimant or his duly authorized representative.

29.     Defendant did not adjudicate Plaintiff's claim in accordance with Defendant's duties under the Plan to provide coverage for EHB. Instead, it simply ignored the fact that the claim was for EHB.

**Defendant failed to establish or maintain reasonable claim procedures**

30.     Upon information and belief, Defendant established and maintained, on a system-wide basis, benefit-claim procedures that are unreasonable and designed to inhibit and hinder Plaintiff and other covered members from receiving benefits.

31.     A "claim for benefits" is defined specifically in DOL Regulations as a "request for a plan benefit" "in accordance with a plan's reasonable procedures for filing benefit claims." 29 C.F.R. § 2560-503-1 (e).

32.     Every Plan must "establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations." 29 C.F.R. § 2560-503-1 (b). In particular with respect to notification of benefit determinations, the Regulation requires, among other things, that the notice include (1) the specific reason for a denial of benefits, (2) a reference to the plan provisions on which the determination was based, (3) a description of the review procedures, and (4) the rules relied upon in making the determination. 29 C.F.R. § 2560-503-1 (g).

33.     Defendant violated 29 C.F.R. § 2560-503-1 (g) in notifying Plaintiff of Cigna's response to Plaintiff' claims for benefits, Cigna ignored the claim for EHB and never told Plaintiff the reasons for the denial. Accordingly, Cigna's "notification" does not meet the requirements of 29 C.F.R. § 2560-503-1 (g). Therefore, Cigna failed to establish and maintain reasonable claims procedures for adjudicating Plaintiff's claim.

34.     Because Cigna failed to establish and maintain reasonable claim procedures through two of Plaintiff's appeals, upon information and belief, Cigna has failed to establish and maintain reasonable claim procedures in violation of its Plan mandated discretionary duties on a nation-wide basis.

## Defendant Is a Fiduciary and Party In Interest

35.     Plaintiff is a member of an employee welfare benefit plan as that term is defined in 29 U.S.C. § 1002(1)(A), insured or administered by Defendant to provide members with medical care.

- 8 -

36.    ERISA requires every plan to provide for one or more named fiduciaries who will have "authority to control and manage the operation and administration of the plan." ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1).

37.    ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under § 402(a)(1), 29 U.S.C. § 1102(a)(1), but also any other persons who in fact perform fiduciary functions. Thus, a person is a fiduciary to the extent "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). This is a functional test. Neither "named fiduciary" status nor formal delegation is required for a finding of fiduciary status, and contractual agreements cannot override finding fiduciary status when the statutory test is met.

38.    In addition, a fiduciary that appoints another person to fulfill all or part of its duties, by formal or informal hiring, subcontracting, or delegation, assumes the duty to monitor that appointee to protect the interests of the ERISA Plans and their participants. The power to appoint, retain, and remove plan fiduciaries or service providers confers fiduciary status upon the person holding such power. An appointing fiduciary must take prudent and reasonable action to determine whether the appointees are fulfilling her own separate fiduciary obligations.

39.    Defendant is a fiduciary in that it *exercised* discretionary authority or control respecting the following plan management activities, ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i), and in that it *had* discretionary authority or discretionary responsibility in the

administration of the Plaintiff's Plan, ERISA § 3(21)(A)(iii), 29 U.S.C. § 1002(21)(A)(iii), because, by way of example, it did and/or could do one or more of the following:

      (a)     exercise discretionary authority pursuant to the Plan as alleged above;

      (b)     dictate the amount paid to providers for healthcare;

      (c)     charge and/or dictate the amount charged patients for healthcare;

      (d)     charge patients more for healthcare than they should have been charged pursuant to the terms of the Plan;

      (e)     manage the provision of healthcare, including processing and paying for claims, services and equipment;

      (f)     improperly trade off the interests of members for the benefit of itself or its affiliates; and

      (g)     dictate and negotiate whether a type of healthcare was covered.

40.     Moreover, the Plan expressly granted Cigna broad discretionary authority under the Plan, including the authority to determine benefit payments.

**Defendant's ERISA Duties**

41.     **The Statutory Requirements:** ERISA imposes strict fiduciary duties upon plan fiduciaries. ERISA § 404(a), 29 U.S.C. § 1104(a), states, in relevant part, that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of providing benefit to participants and her beneficiaries; and defraying reasonable expenses of administering the plan; with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims; . . . in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and Title IV.

42.     **The Duty of Loyalty.** ERISA imposes on a plan fiduciary the duty of loyalty—that is, the duty to "discharge his duties with respect to a plan solely in the interest of the participants

and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and her beneficiaries . . . ." The duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

43.     **The Duty of Prudence.** Section 404(a)(1)(B) also imposes on a plan fiduciary the duty of prudence—that is, the duty "to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man, acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. . . ."

44.     **The Duty to Inform.** The duties of loyalty and prudence include the duty to disclose and inform. These duties entail: (a) a negative duty not to misinform; (b) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and (c) a duty to convey complete and accurate information material to the circumstances of participants and beneficiaries.

45.     **Rights of Action Under the Plans, for Fiduciary Breach, Prohibited Transactions, and Related Claims.** ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), provides that a participant or beneficiary may bring an action to recover benefits, enforce rights under the terms of the plan or to clarify his rights to future benefits under the terms of the plan. Further, ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes individual participants and fiduciaries to bring suit "(A) to enjoin any act or practice which violates any provision of this subchapter or the

terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

## COUNT I

### ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)

46.    Plaintiff incorporates by reference each and every allegation above as if set forth fully herein.

47.    ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) provides that a participant or beneficiary may bring an action to recover benefits due under the terms of a plan, enforce rights under the terms of the plan or to clarify rights to future benefits under the terms of the plan.

48.    As set forth above, Plaintiff has been denied her benefits under the Plan and is entitled to enforce her rights under the terms of the Plan.

49.    Plaintiff has been damaged in the amount of the benefit denied.

50.    Plaintiff is entitled to recover benefits, enforce her rights under the terms of the plans and seek clarification of her future rights and is entitled to an order providing, among other things, for payment of all amounts due in accordance with her rights under the Plan.

## COUNT II

### ERISA § 502(a)(2) and (3), 29 U.S.C. § 1132(a)(2) and (3)<br>for Violations of ERISA § 404, 29 U.S.C. § 1104

51.    Plaintiff incorporates by reference each and every allegation above as if set forth fully herein.

52.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), provides that a fiduciary shall discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries and defraying

reasonable expenses of administering the plan, and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

53.     Defendant breached its fiduciary duties by failing to follow the claim procedures set forth in the Plans and failing to establish and maintain reasonable claim procedures.

54.     Plaintiff has been damaged and suffered losses in the amount of the amount she paid for medical services.

55.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action: "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

56.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Court should order equitable relief to Plaintiff, including but not limited to:

(a)     an accounting;

(b)     a surcharge;

(c)     readjudication of her claim;

(d)     correction of the transaction;

(e)     disgorgement of profits;

(f)     an equitable lien;

(g)     a constructive trust;

(h)     restitution;

(i)     full disclosure of the foregoing acts and practices;

(j)     an injunction against further violations; and/or

- 13 -

(k)     any other remedy the Court deems proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A.     Finding that Defendant is a fiduciary as defined by ERISA;

B.     Finding that Defendant violated its fiduciary duties of loyalty and prudence and awarding Plaintiff such relief as the Court deems proper;

C.     Finding that Defendant denied Plaintiff her benefits and her rights under the Plan and awarding such relief as the Court deems proper;

D.     Finding that Plaintiff is entitled to clarification of her rights under the Plan and awarding such relief as the Court deems proper;

E.     Awarding   Plaintiff   damages,   surcharge,   and/or   other   monetary compensation as deemed appropriate by the Court;

F.     Awarding Plaintiff' counsel attorneys' fees, litigation expenses, expert witness fees and other costs pursuant to ERISA § 502(g)(1), 29 U.S.C. 1132(g)(1); and

G.     Awarding such other and further relief as may be just and proper, including pre-judgment and post-judgment interest on the above amounts.

Respectfully submitted,

Dated:  January 19, 2021                 /s/ Robert A. Izard

Robert A. Izard (ct01601)
Craig A. Raabe (ct04116)
Christopher M. Barrett (ct30151)
**IZARD, KINDALL & RAABE, LLP**
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: 860-493-6292
Facsimile: 860-493-6290
rizard@ikrlaw.com
craabe@ikrlaw.com
cbarrett@ikrlaw.com